[Cite as *In re N.C.1*, 2014-Ohio-2430.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: N.C.1, A.C., and N.C.2. | : | APPEAL NO. C-140097 |
| | | TRIAL NO. F01-2211x |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 6, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ernest Lee*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Leslie Kennedy*, for Appellee Guardian Ad Litem,

*Timothy McKenna*, for Appellant Mother,

*Roberta Barbanel*, for A.C.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Appellant mother appeals the judgment of the Hamilton County Juvenile Court terminating her parental rights and granting permanent custody of her sons, N.C.1, A.C., and N.C.2, to the Hamilton County Department of Job and Family Services ("HCJFS"). She challenges the weight of the evidence supporting the trial court's judgment. After reviewing the record, mother's arguments, and the applicable law, we conclude the trial court's judgment is supported by competent, credible evidence, and therefore, affirm its decision to terminate her parental rights and award permanent custody of her three sons to HCJFS.

### Juvenile Court Proceedings

{¶2} Mother has four children with father. N.C.1, A.C., and N.C.2 are the three youngest children. In 2010, mother was homeless, and left the children in the custody of their maternal grandmother. The maternal grandmother contacted 241-KIDS, and the children were placed in the protective supervision of HCJFS in April 2010. When the maternal grandmother reported she could no longer care for the boys and the parents failed to follow through with services, the court terminated the order of protective supervision and granted HCJFS's motion for interim custody in May 2010.

{¶3} While the boys were in foster care, they made allegations that they had been sexually abused by an older brother. In August 2010, the boys were adjudicated dependent and HCJFS was granted temporary custody of them. In March and August 2011, the juvenile court granted HCJFS extensions of temporary custody.

{¶4} In January 2012, HCJFS moved for permanent custody of the boys. In April 2013, the magistrate heard testimony from N.C.1's and N.C.2's therapists, the HCJFS caseworker, a support worker in the foster care program for N.C.1, and mother's case manager and therapist. The magistrate granted HCJFS's motion for permanent

custody in September 2013. Mother filed a timely objection, arguing the magistrate's decision was not supported by the weight of the evidence. In January 2014, the trial court overruled mother's objection and adopted the magistrate's decision terminating her parental rights and granting permanent custody of N.C.1, A.C., and N.C.2 to HCJFS.

### *Weight of the Evidence*

{¶5} In a single assignment of error, mother argues the trial court's judgment granting permanent custody of N.C.1, A.C., and N.C.2 to HCJFS was contrary to the manifest weight of the evidence.

{¶6} A trial court is authorized to terminate parental rights and to grant permanent custody to a children services agency if it finds by clear and convincing evidence that the children's best interest would be served by a grant of permanent custody to the agency and that one of the four conditions enumerated in R.C. 2151.414(B)(1)(a) through (d) has been met. *See* R.C. 2151.414(B); *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 48; *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus (clear and convincing evidence is that which produces in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established"). This court "will not substitute [it's] own judgment for that of the trial court applying a clear and convincing standard where some competent and credible evidence supports the trial court's determinations." *In re W.W.* at ¶ 46.

{¶7} Mother argues that there is no competent and credible evidence to support the juvenile court's finding pursuant to R.C. 2151.414(B)(1)(a) that the children could not be placed with her within a reasonable period of time or that it was in the best interests of N.C.1, A.C., and N.C.2 to grant permanent custody to HCJFS.

{¶8} R.C. 2151.414(E) identifies factors for determining whether a child cannot or should not be placed with either parent within a reasonable time. If a court finds, by clear and convincing evidence, that any one of the R.C. 2151.414(E) factors exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See In re W.W.* at ¶ 54-58. Pertinent here, the trial court found that mother's failure to substantially remedy the conditions that caused the children to be placed outside the home, and her chronic mental illness and mental retardation, made her unable to provide an adequate permanent home at the present time, or as anticipated, within one year of the hearing. *See* R.C. 2151.414(E)(1) and (2).

{¶9} In determining the best interests of N.C.1, A.C., and N.C.2, the trial court made findings based on the following statutory factors: (1) the interaction and interrelationship of the children with their parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the children; (2) the wishes of the children, as expressed directly by the children or through the children's guardian ad litem; (3) the custodial history of the children, including whether the children have been in the temporary custody of public or private children services agencies for 12 or more months; and (4) the children's need for a legally-secure placement and whether that type of placement can be achieved without a grant of permanent custody. The trial court did not find any of the factors in R.C. 2151.414(E)(7) through (11) applicable to mother. *See* R.C. 2151.414(D)(1); *In re W.W.,* 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, at ¶ 90-91.

{¶10} Mother contends that she visited with her children regularly and interacted with them appropriately. She notes her bond with the children and that

she loves them. She further argues that a legally-secure placement can be made without a grant of permanent custody to HCJFS. She stresses her completion of some case-plan objectives and insists that if she were given more time she could complete the others. Finally, she argues she could protect the children by separating them from their older brother and by reporting any harm to them.

{¶11} After reviewing the record, we find competent, credible evidence to support the juvenile court's findings that the children could not be placed with mother within a reasonable period of time and that it was in their best interests to grant permanent custody to HCJFS.

{¶12} The record reflects that at the time the boys came into the care of HCJFS, mother was struggling to manage their behaviors, meet their mental-health and educational needs, and to get them to school on a consistent basis. N.C.1 has been diagnosed with anxiety and developmental delays. A.C. has been diagnosed with attention deficit hyperactivity disorder and developmental delays. N.C.2 has been diagnosed with a severe speech impediment and developmental delays.

{¶13} The boys' father was diagnosed with paranoid schizophrenia. He has a history of sexually and physically abusing all three boys. He had no involvement with HCJFS and his whereabouts have been unknown throughout the proceedings.

{¶14} Mother suffers from mild mental retardation and was diagnosed with depression. She was also a victim of domestic violence at the hands of father. She admitted to being overwhelmed with the care of the children. The court ordered mother to complete a psychological evaluation, maintain stable housing and income, engage in the boys' therapies, and complete parenting education.

{¶15} While in foster case, the boys made allegations of sexual abuse by an older brother, and eventually had to be separated because of sexually-reactive behavior with each other. The boys have also been in multiple placements because of aggressive behaviors. In March 2011, A.C. was hospitalized and placed in Cincinnati Children's Residential treatment. Mother did not participate in case-management services at Centerpoint or family therapy while A.C. was placed at Cincinnati Children's Residential.

{¶16} In June 2011, N.C.1 made allegations of sexual abuse against mother. The court suspended mother's visits with N.C.1 and ordered her to complete a sexual offender diagnostic assessment ("SODA"). Following the assessment, the court ordered mother to undergo treatment and education for sexual abuse. In August 2011, the court found that N.C.2 was suffering from post-traumatic stress disorder, and displaying signs of psychosis, requiring intense therapy and medisomatic services and constant supervision. N.C.2 had also disclosed that he had been physically and sexually abused by his parents and his brothers.

{¶17} In January 2012, the guardian ad litem filed a motion to terminate mother's visits with all three children at the request of their therapists. All three boys were struggling to manage their behaviors following visits with mother. The trial court granted the motion in August 2012, when, despite therapy and continued visits with mother, the children's anxiety over her visits did not resolve.

{¶18} At the time of the permanent custody trial in April 2013, the boys had been in the custody of HCJFS since May 2010, and mother still had not completed all of her case-plan goals. She had completed parenting education, but she had been unable to maintain consistent and stable housing. She was in her fourth home since December 2011, and would not let the caseworker visit her. She

6

had attended individual counseling 11 times, but she had not attended since December 2012. She had not visited with the boys since August 2012, when the trial court had suspended her visits because their anxiety over her visits had not resolved. Mother's therapist testified that because her visits with the boys had never resumed, she had a difficult time understanding the impact of the sexual abuse on them. Mother had also failed to complete the sexual offender treatment recommended in her SODA.

{¶19} N.C.2 and A.C. had made progress, but they were still struggling with anxiety and depression. A.C. was still in a structured residential setting where he could see his individual therapist and participate in group therapy on a weekly basis. A.C. was expected to be discharged from the residential setting to a therapeutic foster home in June 2013. A.C. wanted to visit with his brothers and his mother.

{¶20} N.C.2's therapist testified that he had continued to talk about the physical and sexual abuse that he had experienced at the hands of his parents and his brothers; he was physically and verbally aggressive with his peers and with adults; he made inappropriate sexual comments; and he displayed extreme anxiety where he had to rock himself to self-soothe. His therapist recommended that family therapy not begin until mother had completed the treatment recommended in her SODA. She further testified that N.C.2 had expressed intense fears about living with his brothers, and had told her that he would run away if he had to live with them again.

{¶21} N.C.1's therapist testified that he has expressed frustration that mother does not believe his reports of abuse and that N.C.1 is concerned that mother will be unable to keep him safe. He had made progress in his therapy following the termination of his visits with mother. He was more even tempered, his social skills

and manners had improved, and he had bonded with his foster mother. N.C.1, however, had recently been displaying some schizophrenic tendencies, including some auditory and visual hallucinations, which was concerning.

{¶22} Both N.C.1 and N.C.2 had expressed a desire to be adopted by their foster parents, and did not want to reunify with their parents. A.C., however, had expressed a desire to live with mother. The guardian ad litem for N.C.1 , N.C.2, and A.C. recommended that HCJFS be granted permanent custody of all three boys. The *In re Williams* attorney for A.C., conveyed that it was A.C.'s wish to be placed with mother. *See In re Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110.

{¶23} The ongoing caseworker recommended that custody of all three boys be granted to HCJFS. She testified that their basic needs, their therapeutic and behavioral needs, and their safety needs were all being met in HCJFS's custody. She acknowledged that mother had bonded with her children and that she loved them, but she testified that given mother's own mental-health needs, the history of physical and sexual abuse the boys had suffered, and mother's inability to protect the boys, that their best interests would be served by a grant of permanent custody to HCJFS.

{¶24} Based upon our review of the record and the applicable law, we hold that the trial court's judgment awarding permanent custody of N.C.1, A.C., and N.C.2 was supported by competent, credible evidence. We, therefore, overrule mother's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J,** and **HILDEBRANDT, J.,** concur.

Please note:
The court has recorded its own entry this date.

8